[No. 8148.  Department Two.  November 4, 1909.]

WIELAND BROTHERS, *Appellant*, v. CHLOPECK FISH
COMPANY, *Respondent*.[1]

SALES—CAVEAT EMPTOR—INSPECTION AND CARE—ESTOPPEL. Where
100 barrels of fish were purchased from packers in December and
ordered stored in a warehouse, upon the packers stating that they
could not hold them until the expected shipping date, January 15, and
the packers delivered the fish after inspecting them according to the
ordinary custom, and agreed to have them looked over at intervals
while in storage for leakage, the principle of caveat emptor applies,
in the absence of fraud; and the duty of inspection and care after
January 15 devolved upon the purchaser, who cannot recover for
spoiled fish where most of the lot was kept in the storage until June
and not examined until August, part of a shipment in April having
been found to be spoiled, and it being more difficult to keep fish
untainted in the summer than in the winter season, and that
strengthening of the brine was generally necessary.

. Appeal from a judgment of the superior court for King
county, Tallman, J., entered January 8, 1909, upon findings
in favor of the defendant, after a trial on the merits before
the court without a jury, in an action for damages.  Af-
firmed.

 *McClure & McClure*, for appellant.

 *Kerr & McCord*, for respondent.         . .

DUNBAR, J.—Plaintiff is a corporation engaged in busi-
ness as a wholesale fish and provision dealer in San Fran-
cisco, California.  Defendant is a corporation engaged in
catching, packing, curing, and selling fish at wholesale, in
Seattle, Washington.  For a number of years prior to the
dealings out of which this suit arose, plaintiff had been a
constant patron of the defendant, and all the transactions
had been satisfactory.  On July 27, 1906, plaintiff wrote to
the defendant asking for quotations on sockeye salmon bellies.
Under date of July 31, 1906, defendant replied, quoting

[1]Reported in 104 Pac. 789.

prices.   On August 3, following, plaintiff placed an order for seventy barrels of sockeye salmon bellies, ten barrels to be delivered immediately and sixty barrels to be held for future shipment.   In acknowledging receipt of this order, defendant wrote to plaintiff as follows, under date of August 7:

"We are in receipt of your favor of the 3rd inst., and contents carefully noted.   We are shipping you on the Steamer Pueblo, which sails from here tomorrow, ten barrels of Blood Red Sockeye Bellies, which run about 225 pounds to the barrel.   Upon receipt of these bellies we wish you would personally examine same and advise us the result of your examination," etc.

Ten barrels were duly received and found to be in good condition.   On the 14th of August, defendant wrote and telegraphed plaintiff as follows:

"We have received your favor of the 7th inst., also 10 barrels Sockeye Bellies, and wired you immediately: 'Bellies received.   Reserve for us 100 barrels.'   And hope that you will be able to reserve us instead of 60 barrels 100 barrels. If you cannot reserve us 100 barrels, then by all means 60."

On the 17th this letter was answered by stating briefly that plaintiff would do its best to comply with the request, and it was complied with.   On November 21 the plaintiff wrote defendant as follows:

"We are pleased to note that you have reserved us about 200 barrels Chum Salmon.   We think that we will be able to have them shipped by about the 15th of January, perhaps sooner.   We expected to be in our new place by the 1st of January, but everything goes so slow here and we have to have patience therefore.   Kindly advise us how many barrels of Sockeye Salmon Bellies you have reserved for us," etc.

Defendant replied to this letter September 28:

"We are in receipt of your favor of the 25th and note what you say in regard to reserving the Salmon Bellies.   In regard to the 200 barrels of Chum Salmon, we do not see how it would be possible for us to hold until after the 1st of January.   We are going to rebuild our cold storage plant

·and salteries and will commence some time during next month. We have got to have all our stock cleared out before we can pull down the building and we are anxious to get all our stock reduced to a minimum. We hope you can make some arrangements to take care of the 200 barrels at an earlier date than mentioned in your letter;"

with some further correspondence concerning the sockeye salmon bellies.

On receipt of this letter and under date of December 1, plaintiff wrote to defendant as follows:

"We have your favor of the 28th inst., from which we note that you have to clear your present premises by the first of January and that you therefore cannot hold the Chum Salmon or Sockeye Salmon Bellies for us. This being the case you will please store for our account as soon as you need the room in the Eyres Storage & Distributing Co. Warehouse, 200 barrels Chum Salmon, 100 barrels Sockeye Salmon Bellies";

with instructions to insure, etc. Defendant accordingly stored with Eyres Storage & Distributing Company, for plaintiff, two hundred barrels of Chum salmon and one hundred barrels of salmon bellies, and under date of December 8, 1906, notified the plaintiff of that fact, sending it the invoice, insurance policies, and warehouse receipts, stating:

"We have had these goods carefully stored and every package carefully examined after being delivered to the warehouse and we are satisfied that you have got a lot of first-class fish. We will have them looked over at intervals while they are in this warehouse to see that no leakage occurs."

In April, 1907, plaintiff withdrew from the warehouse ten barrels of salmon bellies, and on the receipt thereof in San Francisco, found one of them spoiled. In June, 1907, plaintiff received in San Francisco the remaining ninety barrels of salmon bellies and, after having stored them there until August, upon examination thereof found fifty-six of them spoiled. Suit was brought to recover the value of the fifty-seven barrels of spoiled salmon bellies, and storage, freight, and transportation charges thereon.

There is no substantial conflict in the testimony. The law of *caveat emptor* in sales of personal property is to the effect that the purchaser buys at his own risk, unless the seller gives an express warranty, or unless the law implies a warranty from the circumstances of the case or the nature of the thing sold, or unless the seller be guilty of fraudulent misrepresentation or concealment in respect to a material inducement to the sale. There is no showing that there was any fraudulent misrepresentation in this case. Is the purchaser brought within the rule of *caveat emptor?* The court made findings of facts in favor of the respondent, and found the law in its favor also, and rendered judgment for respondent for costs.

The contention of the appellant seems to be that, under the circumstances of this case, the duty of inspection devolved upon the respondent during the time the fish remained in the warehouse subject to the order of the purchaser, and that is the pivotal question in the case. It appears from the testimony that, when these fish were purchased by the respondent, it examined carefully twelve or fifteen barrels and then examined every third barrel, and it seems that this was the ordinary custom of examining fish in such cases. It is true that the respondent stated that it would have the fish looked over at intervals while they were in the warehouse to see that no leakage occurred, but this could only be construed as a promise to look over them until the middle of January, at which time the appellant had notified respondent that it would be ready to remove the fish. It would seem to us that the duty of inspection would cease at that time, and that it would be unreasonable to hold it was the duty of the respondent to take notice of the location of the fish after that, or to burden itself in any way with them. It does not appear that the respondent was ever notified, at the time the appellant sent for a partial shipment of the fish in April, that there was anything the matter with the fish. In fact, it did

not exercise ordinary prudence itself in having the remainder of the fish examined, but kept them still in storage until June following their storage, and then stored them in San Francisco, and made no examination of them until in August, eight months after they had been purchased.

It was testified by the experts that it was generally necessary about every six months to strengthen the brine on fish by adding salt to the same. It was also testified that an excess of salt in the preparation of salmon bellies, in the language of the witness, "burned them out," and made them tasteless. It is also in evidence that it is harder to keep fish untainted in the summer time than it is in the winter, and the fact that these fish were left by the purchaser uncared for until the winter season had passed and far into the succeeding summer, without making or causing to be made any examination and without even requesting the respondent, from whom it bought them, to make any examination, forecloses it from complaining that the fish were damaged through the fault of the respondent. The testimony as a whole satisfies us that no fraud was perpetrated or attempted by the respondent in the sale of these fish, and that any neglect which induced the spoiling of the fish was attributable to the action of the purchaser, the appellant in this case.

The judgment is therefore affirmed.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.